Gilmore, C. J.
On the 18th of April, 1874 (71 Ohio L. 85), the general assembly passed an act “to amend section 1 of an act entitled ‘ an act providing for inclosing railroads by fences and cattle-guards/ as amended April 26, 1871.” The amendatory act, as far as it is necessary here to recite it, provides : “ That any railroad company, or other party having control or management of a railroad, .the whole or part of which is now or shall be in this state, is hereby required, at their own expense, to construct good and sufficient fence to turn stock along the whole line, except as hereinafter provided, on both sides of said railroad, within six months after the passage of this act, which then have not been fenced as required by this act, and within six months from the time cars are commenced to be run for the transportation of passengers or freight, on all railroads that .have not commenced running regular trains at the date of the passage of this act, and at their own expense to keep said fences up in good repair thereafter, and also to make and maintain safe and sufficient crossings, of good width, at every point where a public road, street, lane, or highway, may cross said railroad, that is or may be used by the public, with the necessary cattle-guards, on each side of said .crossings, to prevent cattle or other domestic animals from endangering themselves and the lives of passengers by getting upon such railroads, and every such railroad company or party shall be liable for all damages sustained in person or property, in any manner, by reason of the want or insufficiency of any such fence,-crossing, or cattle-guard,” etc. This act took effect, and was in force, from and after its passage.
The horse, for the killing of which the action was brought before the justice, was killed on the 16th of July, 1874, being less than six months after the passage of the act. The remedy was sought, and the recovery had under the act above quoted from; the charge of the justice on this point being, that if the plaintiffs were without fault, and the horse was killed “ by reason of the want of fence along the said railroad track, by one of defendant’s trains, *151 .then the jury would be authorized, under the law, to find in favor of plaintiffs.”
If the time within which the railroad company (defendant below) was required to feuce its road, was six months from the date of the act, then, inasmuch as that period had not expired at the time the injury complained of occurred, it follows that the charge of the justice was erroneous; for it authorized the jury to find for the plaintiffs if the horse was killed by reason of the want of fence along the railroad, whether the railroad company or its agents acted negligently in committing the injury or not.
The only question therefore is: Did the act of 1874 give the railroad six months in which to fence its road, as required by the act ? .
We think it did. Until required to do so by legislation, railroads, in this state, were not bound to'fence the line of their roads. The whole subject .is therefore within the control of the general assembly, and in seeking for the intent with which the act in question was passed, we must look to prior legislation on.the same subject. The rule is, that where it is manifestly the intention of the legislature that a subsequent act shall not control the provisions of a former act, the subsequent act shall not have such operation, even though the words, if taken strictly and grammatically, would repeal the former act.
The contention of counsel for defendants in error is, that it has been the well settled policy of this state, since 1859, to require railroads to fence their tracks, so as to preserve life and property. But it is not, and can not be, contended that a subsequent act of the legislature will not control the provisions of a prior statute, if it were intended to have that operation. The legislative intent, in this respect, must be sought, not only in the act of 1874, but also in the prior acts relating to the same subject. Two such acts preceded that of 1874. The first was passed and took effect March 25, 1859. S. & G. 331. It contained five sections. The first required every railroad company, or other party having control of a railroad then in operation, in this state, to con *152 struct good and sufficient fences on both sides of its road, within two years from the date of the passage of the act, or within two years after commencing to run regular passenger or freight cars thereon. By the second section, such fences, when built, as between the railroad company and the owners of improved lands through which the road passed, became partition fences, on the terms therein prescribed. The third section related to the repair of such fences. The fourth section provides that the act shall not affect contracts between railroad companies and the proprietors of adjoining lands, for the construction and maintenance of fences, cattle-guards, and crossings. The fifth section prescribes a penalty, not exceeding fifty dollars, for each and every day any railroad company refuses or neglects to comply with the provisions of the act.
This indicates the scope of the first act. The declared policy or purpose of the act was to “prevent cattle and other animals from endangering themselves and the lives of passengers by getting upon such railroads.” The sub- • sequent acts have not changed this declared purpose or policy.
The first section of the act of 1859 was amended by that of 1871. (68 Ohio L. 78.) The only material changes made by the amendment were, that by this act railroads were required to fence their roads within one, where by the former act they were required to do so in two years, and railroad fences were declared partition fences only when the railroad ran on the boundary of any inclosed farm or farms.
There is, however, a noticeable proviso in the first section of this act, which reads as follows : “ Nothing herein shall be construed to extend the time within which any existing railroad company, or other party, is required to fence its railroad, by the act hereby amended.” This proviso is a clear indication of the legislative intent as to existing railroads, and it continued the first act in force as to existing roads. In other words, there was only a partial repeal of the first section of the first act, although the second sec *153 tion of the amendatory act expressly repeals sections one, two, and three of the amended act.
The first section of the act of 1874 amends the first section of the act of 1871. The material changes made were that six months is fixed as the time within which existing railroads are required to fence their roads, instead of one year, as required by the first section of the act of 1871, and railroad fences do not become partition fences, but are to be built and kept in repair at the expense of the railroad company.
The second section of.the act of 1874 reads as follows: “ Section one of said act, passed April 26, 1871, amending section one of an act entitled ‘ an act providing for indos ing railroads by fences and cattle-guards,’ passed March 25, 1859, is hereby repealed.” But the second section of the act of 1871, which repeals sections one, two, and three of the act of 1859,,is not repealed. I do not mention this because it is of legal significance in this case, but because it reflects upon the intention of the legislature, and when taken in connection with the fact that the proviso of the act of 1871 is omitted in the act of 1874, it shows conclusively that it was the intention of the legislature to repeal, not only the first section of the act of 1871, but the first, second, and third sections of the act of 1859, which we find was done. This left the first section of the act of 1871, and the fourth and fifth sections of the act of 1859, only, in force.
Independent of legislation, there is no state policy in reference to the fencing of railroads, which we are authorized to recognize.
The act of 1874 clearly gives to l-ailroad companies then in operation, and whose roads were not fenced, as was the case with the defendant company (plaintiff in error), six months from the date of the passage of the act within which to fence their road. This period had not elapsed at the time the injury occurred for which the plaintiffs below brought their action, and the liability imposed by the statute could not attach to the company at the time of the injury, for it was not then in default in fencing its road.
*154 This decision does not touch questions that may arise in reference to fences that were built by railroads in pursuance of the requirements of the acts of 1859 and 1871.
■ The charge of the justice was erroneous.
The judgments of the district court, court of common pleas, aud justice’s court respectively, are reversed, and cause remanded to the court of common pleas for such further proceedings as may be authorized by law.

Judgment accordingly.